UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| JOHNNY PRESCOTT & <br> SON OIL COMPANY, INC. <br>            Plaintiff <br><br> v. <br><br><br> RYMES HEATING OILS, INC., Defendant <br>            Defendant | No. _____ <br><br> **JURY TRIAL DEMANDED** |

## VERIFIED COMPLAINT

Johnny Prescott & Son Oil Company, Inc., by and through their attorneys, Ransmeier & Spellman Professional Corporation, complains against Rymes Heating Oils, Inc., and in support of their Complaint states the following:

## PARTIES

1. Johnny Prescott & Son Oil Company, Inc. ("Prescott") is a New Hampshire corporation with an address of 122 Airport Road, Concord New Hampshire 03301.

2. Rymes Heating Oils, Inc. ("Rymes") is a New Hampshire corporation with an address of 802 Soucook Lane, Pembroke, New Hampshire 03275.  Besides its Pembroke headquarters, Rymes has other offices throughout the state, including Antrim, Keene, Claremont, New London, Tilton, Ossipee, West Lebanon, Somersworth, and Lancaster, as well as Martha's Vineyard, MA.

## JURISDICTION

3. This Court has jurisdiction over this matter under 15 U.S.C. §§ 15 and 26, and 28 U.S.C. § 1367(a).

**FACTUAL ALLEGATIONS**

4. Since 1940, Prescott has been a family owned and operated distributor of heating fuels serving the capitol region. It also offers quality installation and repairs of furnaces, boilers, and other heating equipment.

5. Prescott has developed a loyal customer base and is known for its quality, responsive service in the capitol region.

6. Prescott's distribution facility is in Concord. Prescott receives its fuel from third party fuel wholesalers. Prescott stores such fuel in tanks at its distribution facility, and taps these tanks to make deliveries to customers. It also distributes fuel to smaller, local distributors, including Davis, in a practice known as "through-putting."

7. Through-putting works in one of two ways. Sometimes, through-putters purchase fuel directly from third party wholesalers but pick it up at Prescott's distribution facility. Prescott charges a premium for the costs associated with storing and dispensing the fuel. Alternatively, Prescott sells its own oil to through-putters at a small premium.

8. Through-putting requires additional infrastructure such as greater tank capacity, separate meters, and increased maintenance and inspection which, in turn, increase Prescott's costs. However, Prescott has been able to cover these costs and defray its own costs by through-putting to local distributors.

9. On or about July 25, 2013, Tom Prescott, Prescott's president, received a call from John Rymes, Rymes' vice president, which call he returned on or about July 30, 2013, as he was out of the office. Rymes stated that he heard there was a new competitor in Epsom. Prescott replied that Davis was getting into the propane business.

10. Davis Fuels of Epsom, Inc., (hereinafter "Davis") is a New Hampshire corporation with an address of 67 River Road, Epsom, New Hampshire.

11. Davis through–puts oil and propane from Prescott.

12. Rymes countered that he was not happy because Davis took one of Rymes' customers, to which Prescott replied that there is plenty of business out there for everyone. Rymes proceeded to ask where Davis was picking up his propane. Prescott responded that, as Rymes knew, Davis has been through-putting his heating fuel from Prescott for years, and that he would be doing the same with his propane.

13. Rymes' response was, "game on Tom, I will be selling heating oil in the Concord-Bow area for cost so you won't make any money this year."

14. On or about August 10, 2013, Rymes began advertising heating oil at $2.99 per gallon cash, and $3.07 per gallon pre-buy—approximately 50 cents below any other distributors and below cost for dealers such as Prescott and Davis. See Exhibit A.

15. On information and belief, Rymes is only offering the advertised prices in Concord, Chichester, Bow, Epsom and Pembroke.

## COUNT I – CONSUMER PROTECTION ACT

16. RSA 358-A:2, XIV prohibits the "[p]ricing of goods or services in a manner that tends to create or maintain a monopoly, or otherwise harm competition."

17. Additionally, RSA 358-A:2 broadly proscribes the use of "any unfair method of competition or any unfair or deceptive act or practice."

18. All defendants are persons engaged in trade or commerce within this state to which the Consumer Protection Act applies.

19. John Rymes' telephone conversation of July 30, 2013, with Prescott expressing

3

concern about Davis competing in the capitol area, along with his statement of "game on," and defendants' subsequent pricing of heating fuel at or below cost in the capitol area only are actions intended and/or tending to create or maintain a monopoly, or otherwise harm competition.

20. Defendants' actions have the purpose or effect of excluding competitors from the market, creating or maintaining a monopoly, or otherwise harming competition.

21. Rymes' pricing is also predatory and in violation of RSA 358-A:2 in that it is below some appropriate measure of cost, *see LaChance v. U.S. Smokeless Tobacco*, 156 N.H. 88 (2007), and has the intention and/or effect of barring competitors from entry to the market and harming existing competition.

22. Additionally, Defendants' actions are unfair methods of competition and/or unfair or deceptive acts or practices within the general proscription of RSA 358-A:2.

23. Prescott has been injured by Defendants' conduct.

### **COUNT II – ILLEGAL RESTRAINT OF TRADE (STATE LAW)**

24. RSA 356:2, I-II states that "[e]very contract, combination, or conspiracy in restraint of trade is unlawful[,]" and that "[e]very contract, combination, or conspiracy is unlawful which has the purpose or effect of . . . [r]efusing to deal, or coercing, persuading or inducing any person to refuse to deal, with another person."

25. John Rymes' conduct as alleged above, including contracting with consumers in the capital area for the sale of heating oil at or below cost, is an effort to coerce, persuade or induce Prescott to refuse to deal with Davis in violation of RSA 356:2, II(d).  Such contracts are also an effort to coerce, persuade, or induce other persons, including potential customers, to refrain from dealing with Prescott in violation of RSA 356:2, II(d).

26. Rymes' pricing is also predatory and in violation of RSA 356:2 in that it is below some appropriate measure of cost, *see LaChance v. U.S. Smokeless Tobacco*, 156 N.H. 88 (2007), and has the intention and/or effect of barring competitors from entry to the market and harming existing competition.

27. All such conduct is generally in restraint of trade in violation of RSA 356:2, I.

28. Prescott's business is threatened with, and/or injured by, Defendants' violations of RSA 356.

## COUNT III - ILLEGAL MONOPOLY (STATE LAW)

29. RSA 356:3 prohibits "[t]he establishment, maintenance or use of monopoly power, or any attempt to establish, maintain or use monopoly power over trade or commerce for the purpose of affecting competition or controlling, fixing or maintaining prices[.]"

30. Together with the circumstances alleged above, the pricing of fuel at or below cost in a particular region is the use or attempted use of a monopoly power over trade or commerce, and was taken for the purpose of negatively affecting Prescott, in violation of RSA 356:3.

31. Prescott's business is threatened and/or injured by Defendants' violations of RSA 356.

## COUNT IV - DISCRIMINATORY PRICING (CLAYTON ACT)

32. Defendants and their customers are persons engaged in interstate commerce.

33. Defendants' heating oil is a commodity sold for use, consumption, or resale within the United States or any territory thereof, or the District of Columbia or any insular possession or other place under the jurisdiction of the United States.

34. Defendants' pricing of heating oil in the capitol region, under the circumstances alleged above, constitutes discrimination in price between different purchasers of commodities of

like grade and quality.

35. The intent and effect of Defendants' discrimination is or may be to substantially lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

36. Defendants' pricing is specifically designed to eliminate the practice of through-putting, which will eliminate small suppliers such as Davis.  It is also designed to chill the willingness of other distributors to assist small suppliers such as Davis, and it harms Prescott by anticompetitively affecting its through-putting and other business.

37. Rymes' pricing is also predatory in that it is below some appropriate measure of cost, *see LaChance v. U.S. Smokeless Tobacco*, 156 N.H. 88 (2007), and has the intention and/or effect, or may have such purpose, of barring competitors from entry to the market and harming existing competition.

38. Defendants' conduct violates 15 U.S.C. § 13.

39. Prescott's business has been injured by reason of forbidden conduct under the antitrust laws of the United States.

### COUNT IV – ILLEGAL UNDERSELLING (CLAYTON ACT)

40. By engaging in the alleged conduct, Defendants have sold, and/or contracted to sell, goods in any part of the United States at prices lower than those exacted by said person elsewhere in the United States for the purpose of destroying competition, or eliminating a competitor in such part of the United States.

41.  Additionally, Defendants have sold, and/or contracted to sell goods at unreasonably low prices for the purpose of destroying competition or eliminating a competitor.

42. Defendants' conduct violates 15 U.S.C. § 13a.

43. Prescott's business has been injured by conduct forbidden under the antitrust laws of the United States.

## **DAMAGES**

44. Prescott has suffered and continues to suffer damages as a direct and proximate result of the Defendants' illegal conduct. Prescott is a person whose injuries are of the type the violated laws were intended to prevent, and whose injuries flow directly, and/or materially, from anticompetitive aspects of the Defendants' above described practices.

45. The Plaintiffs pray for an award of actual, multiple, enhanced, and statutory damages, including, but not limited to, lost profits, opportunities, and customers, costs, and attorneys' fees, as permitted and/or mandated under applicable law, including, but not limited to, 15 U.S.C. § 13(a) (mandatory treble damages, costs, and attorneys' fees), RSA 356:11 (up to treble damages, costs, and attorneys' fees permitted for willful or flagrant conduct), and RSA 358-A:10, I (no less than double, and up to treble, damages, costs, and attorneys' fees for willful or knowing conduct).

46. Defendants' conduct is willful, knowing, flagrant, malicious, oppressive, and wholly without justification or privilege.

47. In addition, Prescott seeks preliminary and permanent injunctive relief pursuant to RSA 358-A:10, I, RSA 356:11, I, and 15 U.S.C. § 26.

Respectfully submitted,

JOHNNY PRESCOTT & SON OIL COMPANY, INC.

By their attorneys,
Ransmeier & Spellman Professional Corporation

Dated:  October 2, 2013         By:     /s/ Biron L. Bedard
                                                           Biron L. Bedard, Esq. (NH Bar # 8758)
                                                           One Capitol Street
PO Box 600
Concord, NH 03302
(603) 228-0477
bbedard@ranspell.com

I, Thomas Prescott, President of Johnny Prescott & Son Oil Company, Inc. have read the foregoing and know the contents thereof, and hereby verify that the above information is true and accurate to the best of my knowledge and belief.

Date:  September 24, 2013          */s/ Thomas M. Prescott*
                                               Thomas M. Prescott

STATE OF NEW HAMPSHIRE
COUNTY OF MERRIMACK

Signed and sworn to before me on this 24th day of September, 2013, by **Thomas M. Prescott**, whose identity was determined by (check box that applies and complete blank line, if any):
☒    My personal knowledge of the identity of said person **OR**
☐    The oath or affirmation of a credible witness, _____ (name of witness), the witness being personally known to me **OR**
     The following identification documents:
     ☐ Driver's License
     ☐ Passport
     ☐ Other: _____

                                      */s/ Laurie Lynn Maillette*
                                      Notary Public/Justice of the Peace
                                      My commission expires:   April 15, 2014

496467